IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:13-CR-0094-LMB |
| | ) | 1:14-CV-1765-LMB |
| JOSHUA JACQUIS DUMAS, | ) | |
| | ) | |
| Movant. | ) | |

MEMORANDUM OPINION

Before the Court is Joshua Jacquis Dumas' ("Dumas" or "movant") pro se Motion to

Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C.

§ 2255 ("§ 2255 Motion") [Dkt. No. 52], in which he argues that he received constitutionally

ineffective assistance from his appointed attorney, Denise J. Tassi ("Tassi" or "counsel").

Specifically, Dumas argues that Tassi coerced him into waiving indictment and pleading guilty

to a charge that did not reflect his conduct. § 2255 Motion at 4. The government has responded

to the motion and Tassi has filed a declaration pursuant to 28 U.S.C. § 1746 that addresses her

alleged failure to provide effective assistance. See Resp. in Opp'n [Dkt. No. 59], Feb. 26, 2015

("Gov. Opp'n"); Decl. of Denise J. Tassi [Dkt. No. 57], Feb. 18, 2015 ("Tassi Decl."). Dumas

has filed a response to both the government's opposition and Tassi's declaration. See Movant's

Resp. in Opp'n [Dkt. No. 61], Mar. 27, 2015 ("Dumas Opp'n").

Having reviewed the entire record, the Court finds no merit to Dumas' motion, which

will be dismissed without the need for an evidentiary hearing.

I. BACKGROUND

On December 11, 2012, after discovering a prostitution enterprise operating out of the

Hyatt House hotel in Herndon, Virginia, Fairfax County Police arrested Dumas, a female

prostitute, and others. Stmt. of Facts ¶ 43 [Dkt. No. 24], Mar. 18, 2013. When he was arrested,

Dumas had in his possession $520 in cash—representing partial proceeds of prostituting juvenile girls—eight Trojan condoms for the use of customers, and two cellular phones. Id. ¶ 45. Because of the interstate nature of the enterprise, Fairfax County turned movant over to federal authorities who initially charged him by a criminal complaint with one count of sex trafficking of a child under 18 U.S.C. § 1519(a), which carried a ten-year mandatory minimum term of imprisonment.

On January 11, 2013, Tassi was appointed to represent Dumas. Id. ¶ 2. Tassi and Dumas met shortly thereafter to discuss the case and Dumas' options, which were limited because he had immediately started cooperating with law enforcement before Tassi was appointed. Id.; Plea Hr'g Tr. 27:2-5 [Dkt. No. 44], Mar. 18, 2013. In that cooperation, Dumas made admissions about his conduct which gave Tassi reduced latitude for plea negotiations. Tassi Decl. ¶ 5. In March 2013, the government offered Dumas a plea bargain that required him to plead guilty to one count of engaging in a Child Exploitation Enterprise pursuant to 18 U.S.C. § 2252A(g), an offense carrying a mandatory minimum sentence of 20 years imprisonment with a possible maximum of life. Gov. Opp'n at 1; Tassi Decl. ¶ 3.

On March 18, 2013, Dumas waived indictment and pleaded guilty under a plea agreement to a one-count criminal information charging him with engaging in a Child Exploitation Enterprise in violation of 18 U.S.C. § 2252A(g). He was sentenced to 239 months of incarceration followed by five years of supervised release and ordered to pay restitution of $177,050.23 jointly and severally with his co-conspirators. J. [Dkt. No. 34], June 7, 2013.[1]

Despite waiving his right to appeal any sentence within the statutory maximum, Dumas filed an appeal of his sentence. The Fourth Circuit dismissed the appeal because of the expansive appeal waiver included in Dumas' plea agreement. After filing his appeal but before the Fourth

---

[1] To avoid any problem with movant getting full credit for the 30-days incarceration he had served in state custody on the charge, the Court imposed a 239-month sentence, which amounts to 240 months.

Circuit had rendered final judgment, Dumas filed a Motion to Reduce Sentence in which he argued that because the others who allegedly participated in the child exploitation enterprise with him were not charged as such, he should not be serving a sentence for a crime requiring the participation of three people or more. Mot. to Reduce Sent. [Dkt. No. 46], Dec. 2, 2013. In that motion, he made no claim of factual innocence or coercion by his attorney; rather, his argument was solely as a matter of law that he could not be convicted of the offense to which he pleaded guilty. Id. The Motion was denied because Dumas' appeal divested the Court of jurisdiction over the case. Order [Dkt. No. 47], Dec. 4, 2013. Dumas timely filed his § 2255 motion on December 23, 2014.

## II. DISCUSSION

### A. Standard of Review

A motion under 28 U.S.C. § 2255 provides for collateral attack on a conviction or sentence that was imposed in violation of the United States Constitution or laws, where the court lacked jurisdiction to impose the sentence, where the sentence was in excess of the maximum authorized, or where the sentence or conviction is otherwise subject to collateral attack. To prevail, a movant bears the burden of proving his grounds for collateral relief by a preponderance of the evidence. Vanater v. Boles, 377 F.2d 898, 900 (4th Cir. 1967).

Relief under § 2255 is designed to correct fundamental constitutional, jurisdictional, or other errors, and it is therefore reserved for situations in which failing to grant relief would otherwise "inherently result[] in a complete miscarriage of justice." United States v. Addonizio, 442 U.S. 178, 185 (1979) (quoting Hill v. United States, 368 U.S. 442, 428 (1962)).

### B. Ineffective Assistance of Counsel

To establish ineffective assistance of counsel Dumas must satisfy the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668 (1984), which requires a showing of both

3

deficient performance by counsel and prejudice to the defendant resulting from that deficient performance. Id. at 687. Because it "is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence" and because a wide range of legitimate defense strategies are possible in a given case, "scrutiny of counsel's performance must be highly deferential." Id. at 689. Moreover, Dumas must make an additional showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id.; see also id. at 694 ("A reasonable probability is a probability sufficient to undermine confidence in the outcome.").

Defendants who plead guilty, as Dumas did, must meet a heightened burden of proving prejudice by showing that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 57-59 (1985); see also United States v. Dyess, 478 F.3d 224, 237 (4th Cir. 2007). Furthermore, such petitioners "must convince the [C]ourt that a decision to reject the plea bargain would have been rational under the circumstances." Padilla v. Kentucky, 559 U.S. 356, 372 (2010). In making this showing, Dumas' "subjective preferences, therefore, are not dispositive; what matters is whether proceeding to trial would have been objectively reasonable in light of all of the facts." United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012).

Importantly, "[a]bsent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy." Fields v. Attorney Gen. of Md., 956 F.2d 1290, 1299 (4th Cir. 1992); United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005) ("In the absence of extraordinary circumstances . . . , allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly

conducted Rule 11 colloquy are always palpably incredible and patently frivolous or false.")
(internal quotation marks omitted).

### 1. Deficient Performance

Dumas raises several complaints regarding the conduct of his counsel, who he alleges coerced him into waiving his right to indictment and pleading to a count with a mandatory minimum sentence of 20-years imprisonment. Dumas' reply alleges that many of the claims in the government's opposition and Tassi's sworn statement are false; however, he provides no additional evidence beyond his conclusory statements to overcome the dispositive effect of his sworn statements during the Rule 11 plea colloquy. See Dumas Opp'n. Furthermore, Dumas readily admits to his underlying conduct and makes no claim of actual innocence. His dispute is over his sentence. As such, there is neither a legal nor a factual basis in the record to support any of Dumas' claims of deficient performance.

As an initial matter, both Tassi and the government aver that Tassi zealously attempted to obtain a more favorable deal for Dumas; however, the prosecutors declined Tassi's entreaties because they possessed sufficient evidence to establish the more serious offense as a result of Dumas' initial statements to law enforcement. Tassi Decl. ¶ 4; Gov. Opp'n at 1-2. Tassi's effort to negotiate a better deal is confirmed by the filing of a Joint Motion to Extend Time to File Indictment on January 30, 2013, signed by Dumas, which allowed the parties more time for plea discussions. Tassi Decl. ¶ 5. Nevertheless, despite Tassi's failure to obtain a better plea bargain, Dumas conceded during the plea colloquy that he was "fully satisfied with the way in which Ms. Tassi [] worked for [him] in this case." Plea Hr'g Tr. 27:15-18. Similarly, Dumas acknowledged in his Plea Agreement that he was satisfied that his attorney had "rendered effective assistance," Plea Agr. ¶ 4 [Dkt. No. 23], Mar. 18, 2013.

Dumas first argues that Tassi advised him that if he waived indictment, he would receive

a maximum sentence of ten years. § 2255 Motion at 3-4. This claim is contradicted by counsel's

sworn declaration in which she says, "I never advised Mr. Dumas that if he waived indictment or

pleaded guilty he would be sentenced to only 10 years of imprisonment, because I knew that

such statements would not be true." Tassi Decl. ¶ 7. Tassi's statement is bolstered by Dumas'

affirmation made under oath during the part of the plea hearing in which he waived indictment,

Dumas, who was 21 years old, and had obtained a G.E.D., stated that no one promised or

suggested that he would receive a more favorable sentence in exchange for waiving indictment

and that no one pressured or forced him to waive indictment.

> THE COURT: Now, other than the plea agreement that you have with the government, has anybody promised or suggested to you that by waiving indictment, you would get a lighter sentence or more favorable treatment by the Court?
> THE DEFENDANT: No, Your Honor.
> THE COURT: Has anyone put any force or pressure on you to waive indictment today?
> THE DEFENDANT: No, Your Honor.

Plea Hr'g Tr. 6:14-21. As discussed supra, to overcome sworn statements made during a Rule 11

plea colloquy, Dumas must produce "clear and convincing evidence to the contrary." Fields, 956

F.2d at 1299. He has failed to adduce any evidence that meets this high standard, and there is

nothing in the record that suggests Tassi's performance in counseling Dumas about whether to

waive indictment was deficient in any way.

Second, Dumas alleges that counsel used threats of a mandatory life sentence to coerce

him into signing the plea agreement.[2] § 2255 Motion at 4-5. Tassi denies that she ever threatened

movant. Tassi Decl. ¶ 26. This claim suffers from the same defect as the first; Dumas has failed

to adduce the "clear and convincing evidence" that would be required to overcome his statements

---

[2] Dumas seems to misunderstand the elements of § 2252A(g), which, contrary to the assertion in his § 2255 Motion, do not include possession of child pornography. § 2255 Motion at 3. As such, despite Dumas' claims, Tassi provided him with accurate legal advice when she failed to mention possession of child pornography as an element of § 2252A(g), because it is not an element of that crime.

at the Rule 11 plea colloquy.

> THE COURT: Has anyone put any force or pressure on you to plead guilty today?
> THE DEFENDANT: No, Your Honor.

Plea Hr'g Tr. 32:5-7. Likewise, after the Court exhaustively recited the elements of the count to

which Dumas was pleading guilty along with their concomitant stipulations from the signed

statement of facts, the following exchange took place:

> THE COURT: All right. Do you claim in any respect that you're innocent of the charge
> of being involved in the child exploitation enterprise? Do you claim in any respect that
> you're innocent?
> THE DEFENDANT: No, Your Honor.

Id. 40:24-41:3. There is no evidence in the record that overcomes the strong presumption of

veracity conferred on such sworn statements made during a Rule 11 plea colloquy. Accordingly,

Tassi's performance could not be found to be deficient in this regard.

Finally, Dumas avers that Tassi directed him to answer all of this Court's inquiries at the

Rule 11 plea colloquy with a "yes," and threatened him with a life sentence if he did not follow

her directions or dared to mention a desire to go to trial. § 2255 Motion, Aff. ¶ 7. Tassi refutes

this contention, asserting "I never told Mr. Dumas to answer 'yes' to all questions posed by the

Court, nor did I ever tell Mr. Dumas not to tell the Court about a desire for trial." Tassi Decl. ¶

17. Rather, she avers that she spoke with him about what to expect during his plea colloquy and

reviewed the types of questions that the Court would ask, but did not direct him to answer the

Court's questions in any specific way. Id. ¶ 18.

In addition to Tassi's declaration, Dumas' statements during the Rule 11 plea colloquy

plainly contradict his claim that he automatically answered "yes" to every question. For example,

during the discussion about restitution he asked a question.

> THE COURT: And among other things, that would mean that while you're in prison, if
> you have a prison job, for example, the Bureau of Prisons would take some of your

> money to pay for the restitution. Do you understand that?
> THE DEFENDANT: Yes, Your Honor. I have a question.
> THE COURT: Yes.
> THE DEFENDANT: I would like to know the full amount I had to pay?

Plea Hr'g Tr. 21:6-13. This exchange is hardly demonstrative of a defendant mechanically

answering each question with a "yes." Similarly, when the Court asked if he understood that he

could still be prosecuted in other jurisdictions, and asked if he had discussed that possibility with

his counsel, Dumas replied "Yea, but she was saying that if I was prosecuted here, I wouldn't be

prosecuted nowhere else." Id. 23:6-7. In fact, during the colloquy, he went so far as to correct the

Court's misstatement about the age of the minor females involved. Id. 29:17-19 ("Wait, hold up.

You said under the age of 16?"). Lastly, he answered "no" to several questions. See, e.g., id.

32:7, 38:5, 40:10, 41:3. These multiple responses unequivocally demonstrate the falsity of

Dumas' claim that he was instructed by counsel to answer "yes" to the Court's question. In sum,

Dumas' allegations fail to establish that Tassi's performance was deficient.

### 2. Prejudice

Even if the alleged instances of ineffective assistance had been established, none would

satisfy the baseline showing of prejudice required by Strickland, let alone the heightened burden

imposed on defendants who pleaded guilty. As mentioned supra, Dumas must show that but for

his counsel's deficient performance, he would not have entered a guilty plea. See Hill, 474 U.S.

at 57-59. Notably, Dumas' subjective preferences are not germane to this inquiry; rather, to carry

this heavy burden, Dumas must demonstrate that it would have been objectively reasonable to

eschew a plea agreement in favor of going to trial. Fugit, 703 F.3d at 260.

Dumas could not make the required showing of prejudice on his allegations that his

attorney misinformed him about the term of imprisonment to which he was exposed, coerced

him into waiving indictment, or told him to answer "yes" to every question during the Rule 11

plea colloquy. As an initial matter, the written Plea Agreement, which Dumas testified he first

saw a few days before waiving indictment, Plea Tr. 9:23-10:7, put him on notice of 28 U.S.C. §

2252A(g)'s mandatory minimum sentence of 20 years of imprisonment, and possible maximum

of life imprisonment. See Plea Agr. ¶ 1. Further, in signing the Plea Agreement before the Rule

11 colloquy, Plea Hr'g Tr. 4:11-17; 8:19-22, Dumas affirmed his understanding that any

prediction made by counsel regarding his eventual sentence was not binding on the Court. See

Plea Agr. ¶ 5; Plea Hr'g Tr. 19:3-11. As such, the record belies the first step of the requisite

showing of prejudice—that there was a reasonable probability that Dumas would not have

pleaded guilty but for the alleged ineffective assistance. See Hill, 474 U.S. at 57-59.

Moreover, even if Tassi's performance constituted ineffective assistance, Dumas does not

make any credible claim that, standing where he stood at the time he decided to enter his guilty

plea, it would have been objectively reasonable to pursue trial on the charges he might have

faced. In attempting to make an argument that choosing to go to trial would have been

objectively reasonable, Dumas points to the trials of his co-conspirators, Quintavis Dumas and

Koya Rooke, both of whom were convicted of an offense carrying a lesser mandatory minimum

term of imprisonment, 18 U.S.C. § 1591(a). § 2255 Motion at 4. Notwithstanding Dumas'

claims that both were acquitted of the Child Exploitation Enterprise charge, it was only Quintavis

Dumas who was acquitted; the jury failed to reach a verdict on the charge as to Rooke. Gov.

Opp'n at 19. As the government correctly contends, this demonstrates that even if Dumas' acts

were comparable to those of his co-conspirators—and they were not—at least some jurors could

have found him guilty of the Child Exploitation Charge. Id.

The convictions and sentences of Dumas' co-conspirators are not probative of Dumas'

potential fate had he decided to go to trial for several important reasons. As the government

correctly argued, unlike his co-conspirators, Dumas had made several damaging statements to law enforcement upon his arrest. Id. at 7, n.3, 19. Also unlike his co-conspirators who primarily transported girls and rented hotel rooms, Tassi Decl. ¶ 23, Dumas was the primary pimp of two underage girls, one of whom he controlled through violence. Gov. Opp'n at 19. Indeed, Dumas admitted that he used violence on one of the two underage girls in a statement to law enforcement. Tassi Decl. ¶ 23. Dumas also fails to mention that Edwin Barcus, a distant relative of movant and the ring leader of the enterprise, also pleaded guilty to engaging in a Child Exploitation Enterprise and received a 300 month sentence. Id.; Judgment, United States v. Barcus, No. 1:13-CR-00095 (E.D.Va. Jun. 11, 2013), Dkt. No. 32. Accordingly, pointing to the trial outcomes of co-conspirators who were not similarly situated does not establish the requisite showing of prejudice or, that going to trial would have been objectively reasonable under the circumstances.

Furthermore, it is worth emphasizing that the standard for prejudice in this situation is not what a jury might have found had Dumas gone to trial, but whether he would have pleaded guilty but for the alleged ineffective assistance. See Hill, 474 U.S. at 57-59. Among the benefits Dumas received for pleading guilty was the possibility of obtaining a reduction in his sentence for substantially assisting the government. Gov. Opp'n at 16. Tassi also stressed this factor as an important consideration in the cost-benefit analysis for the movant. Tassi Decl. ¶ 5. Indeed, Dumas' Plea Agreement includes an entire page stipulating the ways in which he agreed to cooperate with the government. Plea Ag. ¶ 14. Dumas undercut the benefits he might have received through cooperation by offering statements the government knew to be untrue regarding his receipt of prostitution proceeds, his substantial reluctance to testify against Quintavis Dumas, and by minimizing his role and blaming his victims during an interview with the probation

10

officer preparing his PSR. Gov. Opp'n at 20-21, n.9. Accordingly, Dumas never ultimately

ended up offering what the government characterized as substantial assistance and never reaped

the benefit of a Fed. R. Crim. P. 35(b) reduction in his sentence. Rather, it seems that "buyer's

remorse" is the true motivation of Dumas' arguments; however, any prejudice that did befall

Dumas was a product of his own conduct, and not the result of ineffective assistance of his

counsel.

  In terms of the risks factored into Dumas' ex ante cost-benefit analysis, Tassi reports that

she discussed with Dumas the risks of going to trial, particularly the probability of detailed and

graphic testimony recounting underage girls being prostituted, abused, and drugged. Tassi Decl.

¶ 16. Tassi says that Dumas "informed me that he knew he would be convicted if he proceeded

to trial." Id. ¶ 14. Dumas offers no evidence to refute this statement, nor does he produce any

evidence to support his contention that but for the deficient performance of Tassi he would have

reached a different decision when he undertook this cost-benefit analysis. Indeed, the Fourth

Circuit has recognized that "[p]leading guilty generally involves a conscious decision to accept

both the benefits and burdens of a bargain. That decision may not be lightly undone by buyer's

remorse on the part of one who has reaped advantage from the purchase." Fugit, 703 F.3d 260

(4th Cir. 2012). Here, Dumas may not use what he believes is the benefit of hindsight to establish

that he would not have accepted the benefits of pleading guilty but for his counsel's alleged

ineffective assistance and that that decision would have been an objectively reasonable one.

Accordingly, all of his ineffective assistance of counsel claims will be dismissed with prejudice.

III. CONCLUSION

  For all the above-stated reasons, Dumas' Motion to Vacate, Set Aside or Correct

Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255 fails to establish any

violations of the Constitution or laws of the United States or that the conviction at issue could in any respect be considered a miscarriage of justice.[3] Dumas had the assistance of competent counsel throughout this case, and his decision to waive indictment and plead guilty to a one-count criminal information carrying a mandatory minimum term of imprisonment of 20 years was uncoerced, knowing, and voluntary. Had he not made inconsistent statements which undercut his credibility it is likely he would have been called to testify against his co-conspirators and that would have likely generated a Rule 35(b) motion from the government, enabling the Court to consider reducing the sentence below 20 years. Dumas' failure to fulfil his cooperation agreement is the true reason he remains sentenced to 20 years imprisonment. Accordingly, the motion will be dismissed by an appropriate Order to be issued with this Memorandum Opinion.

Entered this 2ND day of November, 2015.

Alexandria, Virginia

/s/

Leonie M. Brinkema
United States District Judge

---

[3] The record reflects that during the sentencing hearing the Court expressed concern about the length of movant's sentence. Given his young age, a 20-year sentence was harsh. But, given the charge to which Dumas pleaded, the Court had no legal basis to sentence him to less than 20 years imprisonment.